# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
|  | * |  |
| **UNITED STATES OF AMERICA** | * |  |
| **v.** | * | **CRIMINAL NO. JKB-19-0132** |
| **J.J.P. (Male Juvenile),** | * |  |
| **Defendant.** | * |  |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM</u>

On January 17, 2020, this Court granted the government's motion to transfer J.J.P. to adult status. (Mem. Op., ECF No. 42.)  Now pending before the Court is J.J.P.'s motion to reconsider. (Mot. Recons., ECF No. 48.)

The motion is fully briefed.  No hearing is required.  *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Court will deny the motion.

### I.    *Factual and Procedural Background*

On March 20, 2019, the government filed a Juvenile Information charging J.J.P. with seven racketeering-related offenses.  (Information, ECF No. 1.)  The charges related to two murders, two assaults, and other racketeering activity that J.J.P. was allegedly involved with as a member of the Fulton clique of MS-13.  (*Id.* ¶ 14.)  Although J.J.P. has since reached the age of maturity, he was under the age of 18 at the time of the alleged offenses.  (*Id.* ¶ 1.)

On May 3, 2019, the government moved to transfer the case from a juvenile proceeding to the United States District Court where J.J.P. could be prosecuted as an adult.  (Mot. Transfer, ECF No. 22.)  Under the Juvenile Justice and Delinquency Prevention Act ("JJDPA"), 18 U.S.C. § 5031 *et seq.*, the government can prosecute a juvenile as an adult in federal court where the court has

1

jurisdiction over the case and transfer to adult status is "in the interest of justice." § 5032.  A
hearing was held on January 13, 2020 to determine the appropriateness of transfer.  (ECF No. 41.)

After reviewing the written submissions and considering the arguments presented during
the hearing, the Court granted the government's motion to transfer J.J.P. to adult status.  (Mem.
Op. at 8.)  Approximately two months later, the grand jury returned a Sixth Superseding Indictment
in the matter of *United States v. Guerra-Castillo, et al.*, Case No. JKB-16-259, in which it charged
J.J.P. as an adult in a RICO conspiracy and related charges.  (Case No. 16-259, ECF No. 883.)

In relation to the *Guerra-Castillo* matter, J.J.P. was appointed new counsel.  (*Id.*, ECF No.
890.)  J.J.P.'s new counsel now asks the Court to reconsider its prior ruling granting the
government's motion to transfer J.J.P. to adult status.  (Mot. Recons. at 1.)  J.J.P contends
reconsideration is warranted because the legal standard the Court applied in the transfer analysis
is unconstitutional.  (*Id.*)

## II.       Timeliness of the Motion to Reconsider

The first issue before the Court is whether J.J.P.'s motion to reconsider is timely.  Under
Local Rule 105.10, a motion to reconsider must be filed within fourteen days after entry of a court
order.  Local R. 105.10; Local R. 207 (applying Rule 105 to criminal cases).  Here, it is not disputed
that J.J.P. filed his motion almost two months after the deadline expired for filing a motion to
reconsider.  (Opp'n Mot. Recons. at 2, ECF No. 51; Reply at 2, ECF No. 53.)

Nevertheless, J.J.P. contends that the Court should still consider his motion because Local
Rule 604's good cause exception applies.  (Reply at 2.)  There is good cause, J.J.P. argues, because
the brief submitted by J.J.P.'s prior counsel contained "glaring deficiencies," and J.J.P.'s new
counsel was prompt in filing its motion to reconsider after being appointed.[1]  (*Id.* at 2–3.)

---

[1]      J.J.P. also argues there is good cause to suspend the local rules because the motion to reconsider identifies a
clear error of law and it is ultimately the job of a federal court to get the law right.  (Reply at 5.)  For the reasons

Even if the latter is true, the good cause exception is not a tool for newly appointed attorneys to reargue issues they believe they could have argued better than their predecessors. J.J.P. is correct that the brief submitted by J.J.P.'s prior counsel did not address the key factors relevant to the transfer analysis.  (*See* ECF No. 34.)  However, J.J.P.'s prior counsel did present arguments with respect to each of the six factors during the transfer hearing.  Additionally, the Court conducted its own independent investigation into the record before reaching its decision to grant the motion to transfer—it did not, in other words, rely on the brief submitted by prior counsel to identify facts in the record that were favorable to J.J.P.

The Court must also keep in mind the extent to which the Court's prior opinion has already been relied upon.  After the Court issued its prior ruling, the government sought and obtained an indictment charging J.J.P. as an adult in *Guerra-Castillo, et al*.  The government was preparing to try J.J.P. as a defendant in that trial, which was scheduled to begin on June 1, 2020.[2]  The purpose of having a deadline for motions to reconsider is to avoid situations like this where the parties, the Court, and in this case grand jurors, spend time and effort on a matter based on an assumption that a decision is final, only to have that seemingly settled decision re-opened.

For all these reasons, the Court concludes the good cause exception does not apply, and it will deny J.J.P.'s motion to reconsider as untimely.  Even if the motion was timely, however, the Court would still deny the motion on the merits for the reasons set out below.

### III.    The Constitutionality of the Legal Standard

J.J.P.'s primary contention in his motion to reconsider is that the Court applied an unconstitutional legal standard in the transfer analysis.  J.J.P. acknowledges that the standard the

---

explained in Part III, J.J.P.'s motion does not identify a clear error of law, and therefore, the motion does not "itself demonstrate[] good cause to suspend the Local Rules . . . ."  (*Id.*)

[2]    The Court recently postponed this trial because of the Covid-19 pandemic.  (Case No. 16-259, ECF No. 906.)

Court applied is the standard that has long been employed in the Fourth Circuit, but J.J.P. argues

that that standard has been rendered unconstitutional by recent Supreme Court cases addressing

juvenile justice.  (Mot. Recons. at 5–9.)

To understand J.J.P.'s constitutional arguments, a review of the legal landscape and the

Court's prior opinion is helpful.  Under the JJDPA, the government can prosecute a juvenile as an

adult in federal court where the court has jurisdiction over the case and transfer to adult status is

"in the interest of justice." 18 U.S.C. § 5032.  Section 5032 sets forth six factors for the Court to

weigh in making this determination:

> [1] the age and social background of the juvenile; [2] the nature of the alleged offense; [3] the extent and nature of the juvenile's prior delinquency record; [4] the juvenile's present intellectual development and psychological maturity; [5] the nature of past treatment efforts and the juvenile's response to such efforts; [6] the availability of programs designed to treat the juvenile's behavioral problems.

The Fourth Circuit, along with other circuits, has concluded that the second factor—the

nature of the alleged offense—is the most important factor in the analysis.  *See United States v.*

*Robinson*, 404 F.3d 850, 859 (4th Cir. 2005) ("[T]he nature and severity of the crimes is the most

important factor."); *United States v. Juvenile Male No. 1*, 86 F.3d 1314, 1323 (4th Cir. 1996) ("In

the weighing of the various factors, the nature of the crime clearly predominates.").

 In its prior opinion, the Court analyzed each of the six factors relevant to the transfer

analysis.  It concluded that the first and third factors weighed against transfer, the second factor

weighed in favor of transfer, and the remaining factors were neutral.  (Mem. Op. at 8.)  Even

though only one factor—the nature of the alleged offense—weighed in favor of transfer, the Court

concluded that transfer was warranted.  (*Id.*)  The Court explained that this was because the

allegations surrounding J.J.P.'s offense were "extreme": the murders that J.J.P. allegedly

participated in were gruesome, premeditated, and involved dismemberment.  (*Id.* at 4–5.)

Therefore, this factor weighed strongly in favor of transfer, and none of the factors that weighed against transfer did so with enough force to outweigh it.  (*Id.* at 8.)  Accordingly, the Court concluded transfer was in the "interest of justice" and granted the government's motion.

J.J.P. now contends the "profound weight" this Court placed on the second factor was unconstitutional.  (Mot. Recons. at 3.)  J.J.P. points to four Supreme Court cases to support his position: (1) *Roper v. Simmons*, 543 U.S. 551 (2005), which held that the death penalty cannot apply to juvenile offenders; (2) *Graham v. Florida*, 560 U.S. 48 (2010), which held that a mandatory life sentence without parole cannot apply to juvenile non-homicide offenders; (3) *J.D.B. v. North Carolina*, 564 U.S. 261 (2011), which held that a juvenile's age can factor into the analysis of whether a person in the juvenile's position would have thought they were in custody for *Miranda* purposes; and (4) *Miller v. Alabama*, 567 U.S. 460 (2012), which held that a mandatory life sentence without parole cannot apply to juvenile offenders.  (Mot. Recons. at 5–8.) According to J.J.P., these cases articulate an understanding that juvenile minds are different from adult minds, and that juveniles as a whole are less culpable for their actions than adults.  (*Id.* at 5–9.)  Such an understanding, J.J.P. argues, is inconsistent with the Fourth Circuit's juvenile transfer standard, which places more weight on the juvenile's conduct than on these unique attributes of juveniles.  (*Id.*)

The Court is not persuaded that the four cases cited by J.J.P. render the Fourth Circuit's transfer standard unconstitutional.  Three of these cases—*Roper*, *Graham*, and *Miller*—are about whether sentencing a juvenile to the law's harshest penalties constitutes cruel and unusual punishment under the Eighth Amendment.  Whether and when a juvenile can be charged as an adult is simply a different question that implicates different constitutional considerations.  It is even less clear to the Court how the holding in *J.D.B.*—that a juvenile's age informs the *Miranda*

custody analysis—speaks to the question of the role that a juvenile's alleged conduct can play in a transfer analysis.

Even if one considers the broader "fundamental principle" J.J.P. identifies in these cases—that "***children are scientifically and thus constitutionally different than adults***"—there is no basis to conclude that this principle conflicts with the Fourth Circuit's legal standard. (Mot. Recons. at 5 (emphasis in original); Reply at 10.) The Fourth Circuit's standard recognizes that juveniles are different from adults: that is why it requires courts to conduct a six-factor analysis that accounts for the unique attributes of juveniles before permitting a juvenile to be prosecuted as an adult. Here, the Court considered these unique attributes but determined that transfer was warranted because of the extreme nature of the allegations J.J.P. was facing.[3] (Mem. Op. at 8.) However, this did not equate to a conclusion that J.J.P. was "scientifically and thus constitutionally" the same as an adult, and the Court does not hold that view now post-transfer. In sum, J.J.P.'s juvenile status has played a role and, when appropriate, will continue to play a role in this case—that is consistent with the broader "fundamental principle" J.J.P. identifies.

Finally, the Court notes that even if J.J.P.'s legal theory was plausible, adopting such a theory would require upending well-established Fourth Circuit precedent and extending the holdings of four Supreme Court cases into a context in which it does not appear any court has

---

[3]  The Court takes a moment here to elaborate on this holding and to address several instances in which J.J.P. mischaracterizes it. J.J.P. is correct that the nature of the alleged offenses played a very significant role in the Court's conclusion that transfer was warranted. However, the Court's prior ruling was not based "entirely" on the second factor (Mot. Recons. at 2–3), nor did the Court "completely dismiss" the factors that weighed against transfer (Reply at 1). Instead, the Court concluded that the second factor—the most important factor—weighed heavily in favor of transfer, and none of the factors that weighed against transfer did so with enough force to outweigh it. (Mem. Op. at 8.) That is not a conclusion based "entirely" on the second factor; it is a conclusion based on all six factors. The Court also did not engage in impermissible burden shifting to reach this conclusion (Reply at 14); what J.J.P. describes as burden shifting is the process of weighing factors and concluding that the factors that weighed against transfer did not sufficiently counteract the factor that weighed in favor of transfer. (Mem. Op. at 8.) Although these distinctions may seem technical, the Court notes them because they are relevant to J.J.P.'s contention that the Court applied an unconstitutional legal standard.

applied them. That is not the role of this Court. *See Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705, 709 (E.D. Va. 2004), *aff'd sub nom. Jones v. Tyson Foods*, 126 F. App'x 106 (4th Cir. 2005) ("[A] district court in a circuit owes obedience to a decision of the court of appeals in that circuit and must follow it until the court of appeals overrules it.") (citing Moore's Federal Practice, 134.02(2), 3rd Ed., 2000).

Accordingly, the Court concludes that J.J.P.'s argument that the Court applied an unconstitutional legal standard does not provide grounds for reconsidering the transfer decision.

### IV.    *Evidence Omitted or Inadequately Argued under the Wrong Legal Standard*

J.J.P.'s second contention in his motion to reconsider is that the Court should reconsider each of the six factors because there was "evidence omitted" from the prior hearing or "inadequately argued under the wrong standard." (Mot. Recons. at 10.)

The Court has already concluded that it applied the correct legal standard in its transfer analysis, so it will not reconsider the factors under the theory that there was evidence "inadequately argued under the wrong standard." (*Id.*) As for the alleged omitted evidence, the only omitted evidence J.J.P. identifies is that he is not alleged to have "played a leadership role or persuaded others to participate in the crime[s]." (*Id.* at 11.) J.J.P. contends this piece of omitted evidence warrants reconsideration of the transfer decision because the lack of a leadership role is the "dispositive" issue under the second factor. (*Id.*)

The Court disagrees. First, whether a juvenile plays a leadership role in a crime is not dispositive with respect to the second factor: the plain text of § 5032 states that a leadership role "if found to exist, shall weigh in favor of a transfer to adult status, but *the absence of this factor shall not preclude such a transfer*." 18 U.S.C. § 5032 (emphasis added). Second, the Court's prior opinion was not based on an assumption that J.J.P. was a leader. As the Court explained, its

7

conclusion with respect to the second factor was based on the allegations that J.J.P. "actively wielded weapons during the violent attacks" and was allegedly so involved with the murders "that his conduct earned him the nickname 'Little Jason' within the Fulton clique—an apparent reference to the violent antagonist in a horror franchise."  (Mem. Op. at 5.)  This degree of participation was sufficient to convince the Court then and now that the second factor weighs heavily in favor of transfer, even if J.J.P. is not alleged to have led or convinced others to participate in the murders.

Therefore, the Court concludes that the "evidence omitted" or "inadequately argued under the wrong legal standard" does not provide grounds for reconsidering the transfer decision.  (*See* Mot. Recons. at 10.)

### V.     *Conclusion*

For the reasons set forth above, the Court will deny J.J.P.'s motion to reconsider.[4]

DATED this 22nd day of April, 2020.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge

---

[4]     Because the Court's prior decision granting the government's motion to transfer still stands, the Court will not file this memorandum or the accompanying order under seal.